UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

---------------------------------------------------------------------------X

CARLINE MAZARD-SAINTILUS,

                                    Plaintiff,

    -against-

MIAMI-DADE COUNTY,

                                    Defendant.

---------------------------------------------------------------------------X

Case No.:

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Plaintiff CARLINE MAZARD-SAINTILUS (hereinafter "Plaintiff"), by her attorneys, DOLCE LAW PLLC and PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendant MIAMI-DADE COUNTY (hereinafter, "Defendant"), upon information and belief, as follows:

## NATURE OF THE ACTION

1. Plaintiff complains pursuant to **Title VII of the Civil Rights Act of 1964**, as amended, 42 U.S.C. § 2000e *et. seq*. ("Title VII") and the **Florida Civil Rights Act of 1992**, (Fla. Stat. § 760.10, *et seq*.) ("FCRA") and seeks damages to redress the injuries Plaintiff has suffered as a result of being **retaliated against and wrongfully terminated** at her place of work. Plaintiff was subjected to a **retaliatory hostile work environment and retaliation** for reporting a sexual harassment incident involving a minor employee.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 2000(e), *et seq*.

3. The Court has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the actions or omissions giving rise to the claims for relief occurred within this judicial district.

## CONDITIONS PRECEDENT

5. On October 3, 2019, Plaintiff filed a timely charge of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC") and her charge were jointly filed with the Florida Commission on Human Relations ("FCHR").

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated September 30, 2020, with respect to the charge of discrimination.

7. An action was commenced within 90 days of receipt of the Notice of Right to Sue on December 28, 2020 in the United States District Court, Southern District of Florida, Case No. 20-CV-25270-PCH.

8. Upon the Order of United States District Judge Paul C. Huck dated March 18, 2021, one of the two plaintiffs in that case was dismissed from the case without prejudice and with leave to file a complaint in a separate action. Defendant has stated that it would not raise statute of limitations arguments, or timing-related defenses related to the receipt of a right to sue letter and the filing of a complaint, in the separate lawsuit. The Order is annexed to this complaint and this is the separate lawsuit.

## PARTIES

9. At all relevant times herein, Plaintiff was and is a resident of the State of Florida and was and is a "person" and "employee" entitled to protection as defined by the relevant federal and state laws.

10. At all relevant times herein, Defendant, a political subdivision of the State of Florida, provides municipal services and operates the Miami-Dade Economic Advocacy Trust

("MDEAT"), a government organization that provides resources to assist residents of Miami-Dade County.

11. At all times relevant, Defendant employed more than fifteen (15) employees and was Plaintiff's employer within the meaning of the applicable federal and state laws.

## MATERIAL FACTS

12. On or about January 22, 2018, Plaintiff began working for MDEAT as a temporary employee in the position of Special Projects Coordinator.

13. At all times, Plaintiff was a highly proficient employee and performed well in her position/title.

14. In fact, on or about April 19, 2019, MDEAT offered Plaintiff a full-time permanent position as a Loan Servicing Manager, earning a salary of approximately $68,000 per year.

15. At all times, Plaintiff was an above satisfactory employee that performed her duties without any major performance issues.

16. Starting in August 2019, Plaintiff was continuously subjected to a retaliatory hostile work environment stemming from reporting the sexual harassment of a minor employee of Defendant, R.M.

17. On August 19, 2019, R.M. reported to Plaintiff and another staff member of Defendant, Jefferca Boomery, that Rulah Bennett (hereinafter, "Bennett"), another MDEAT staff member whose age upon information and belief was mid-forties, had sexually harassed her by sending her text messages complimenting her physical appearance followed by phone calls during which Bennett complimented R.M.'s body and made it clear he was sexually interested in her (hereinafter the "Sexual Harassment Incident").

18. R.M. indicated to Plaintiff that her direct supervisor was not in so, out of concern and because Bennett was substantially older than the minor R.M., Plaintiff decided to report the Sexual Harassment Incident to the MDEAT's Department Personnel Representative ("DPR").

19. On August 20, 2019, DPR followed up and requested a statement from Plaintiff. Plaintiff provided a written statement regarding the Sexual Harassment Incident, as requested.

20. Immediately following the reporting of Bennett's sexual harassment, Plaintiff's supervisor, Traci Pollock (hereinafter "Pollock"), began a campaign of retaliation against Plaintiff by subjecting her to pervasive disparate treatment and creating a retaliatory hostile work environment.

21. For example, on August 20, 2019, the same day Plaintiff reported the Sexual Harassment Incident, Pollock sent her an email informing her that she could no longer attend a housing conference in Orlando that Plaintiff had been approved to attend.

22. Although Pollock presented other reasons why Plaintiff could no longer attend the conference, those reasons were pretextual. Given the timing of Pollock's decision to rescind her approval for Plaintiff to attend the conference, it was due to Plaintiff reporting the Sexual Harassment Incident.

23. On August 21, 2019, Pollock continued to retaliate against Plaintiff. Pollock called a meeting and summoned all employees, including staff members from the satellite Miami Gardens office. However, Pollock excluded Plaintiff.

24. Plaintiff could hear one of her colleagues express concern that Plaintiff was not present at the meeting. However, Pollock discouraged the employee in their efforts to include Plaintiff.

25. Later on during the meeting, MDEAT's Executive Director, John Dixon (hereinafter "Dixon"), joined and wondered why Plaintiff was not present. Dixon extended an invitation to Plaintiff. However, Pollock attempted to dissuade the invitation by stating that the meeting was wrapping up. Undeterred, Dixon invited Plaintiff regardless.

26. During the meeting, Plaintiff listened as Pollock made conspicuous references to "office gossiping" being unacceptable and repeatedly emphasized that all employees needed to address their concerns to their immediate supervisors and no one else. Plaintiff understood this to be a reference to the Sexual Harassment Incident she had reported.

27. Pollock acted purposefully to isolate and alienate Plaintiff. Plaintiff was excluded from the weekly Team Management Meetings held every Tuesday morning and the weekly Housing Division Meetings held every Wednesday afternoon. Plaintiff attended these meetings with no issues before providing the written statement of the Sexual Harassment Incident on August 20, 2019.

28. Plaintiff realized that Pollock's attempt to exclude her from these meetings was another attempt to retaliate against her.

29. In addition, Pollock communicated with Plaintiff aggressively and in an intimidating and threatening manner. Pollock often mentioned Plaintiff was still in her probationary period to further intimidate Plaintiff and create a retaliatory hostile work environment for her.

30. On August 23, 2019, Plaintiff received an email from Pollock scrutinizing her work and her office interactions. In the email, Pollock created new reporting requirements for Plaintiff. She asked that Plaintiff start keeping a list of all her work activities that Plaintiff would now be required to submit to her each week.

31. This was an effort to make Plaintiff's job more burdensome and difficult. Thereby rendering the work environment even more hostile.

32. On or about August 27, 2019, following her doctor's recommendation, Plaintiff took a leave of absence until September 3, 2019, as her hostile work environment began to wear on her mental health and caused her severe stress and anxiety.

33. On September 12, 2019, a visit to Bayview Loan Servicing to look at the company's technology and operations was scheduled. Plaintiff's presence was specifically requested, but Pollock denied the request.

34. On September 16, 2019, as an intimidation tactic, Pollock sent Plaintiff an aggressive email quoting MDEAT's employee rules. In the email, Pollock accused Plaintiff of attempting to sway public opinion about her management decisions. Plaintiff was taken aback and decided it was time to take action.

35. Pollock's conduct had the purpose or effect of unreasonably and unfairly interfering with Plaintiff's work performance by creating an intimidating, hostile, or offensive working environment in retaliation for reporting the Sexual Harassment Incident.

36. The same day, Plaintiff reached out to MDEAT's DPR representative, Clevell Brown-Jennings (hereinafter "Brown-Jennings"), and complained about the disparate treatment and retaliatory hostile work environment. Plaintiff reported that Pollock had consistently made efforts to harass, intimidate and isolate her in retaliation for reporting another employee's sexual harassment. As a result, Plaintiff had been seeking therapy for her anxiety and depression.

37. Brown-Jennings offered to arrange a meeting between Plaintiff, a representative of DPR, Dixon, and Pollock. Plaintiff expressed her preference to have an initial meeting without

Pollock to discuss her concerns, then have a subsequent meeting to include Pollock. Plaintiff expressed that this was due to her fear of further abuse and retaliation from Pollock. Brown-Jennings acknowledged Plaintiff concerns and said she would look into Dixon's availability.

38. The same day, Plaintiff received a hostile email from Pollock. In the email, Pollock accused Plaintiff of adding Pollock's name to documents without her consent. Plaintiff clarified that the documents, in fact, were pre-drafted by someone other than Plaintiff and had already included Pollock's name. Prior to then, this had never been an issue. This disparate treatment further evidences the retaliation Plaintiff suffered at the hands of Pollock.

39. On September 18, 2019, after she had not heard from Brown-Jennings, Plaintiff reached out to her to inquire about the status of the meeting with Dixon to discuss Plaintiff's retaliation and retaliatory hostile work environment claims.

40. On September 19, 2019, Brown-Jennings, contacted Plaintiff to inform her that a meeting with Dixon would be scheduled for the following week.

41. On September 19, 2019, Plaintiff filed a complaint against Pollock with the Miami-Dade County Human Rights and Fair Employment Practice Division.

42. On September 27, 2019, MDEAT terminated Plaintiff's employment.

43. The above are examples of the acts of retaliation and retaliatory hostile work environment that Plaintiff was subjected to regularly after reporting the Sexual Harassment Incident involving R.M.

44. Upon information and belief, while Plaintiff was experiencing unfair backlash and retaliation, R.M. experienced retaliation of her own. On September 25, 2019, MDEAT notified R.M. that her last day of employment would be September 27, 2019 and, when

R.M. inquired as to the reasons for her termination, she was told that there were budgetary cuts that resulted in layoffs. Upon information and belief, MDEAT's reason for R.M.'s termination was pretextual and, in fact, due to discrimination and retaliation based on her engaging in protected activity by reporting sexual harassment.

45. Plaintiff has suffered tremendously and continues to suffer as a result of Defendant subjecting her to harassment, a retaliatory hostile work environment, and adverse employment actions. These unlawful employment practices have caused Plaintiff serious emotional distress. Additionally, Plaintiff feels humiliated.

46. The discrimination and retaliatory actions of her supervisors left Plaintiff feeling targeted, alone and unsupported at her place of work.

47. Upon information and belief, Defendant is aware of its obligations under Title VII and FCRA.

48. Defendant knew or should have known of the discriminatory conduct of its employees against Plaintiff and failed to take corrective measures within its control.

49. Defendant failed to take seriously Plaintiff's allegations concerning the hostile environment and discriminatory treatment she suffered.

50. As a result of Defendant's actions, Plaintiff felt and continues to feel extremely humiliated, offended, disturbed, degraded, victimized, embarrassed, and emotionally distressed by the blatantly unlawful, discriminatory, and retaliatory conduct.

51. As a result of the acts and conduct complained of herein, Plaintiff has suffered emotional distress, future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, injury to reputation, and other non-pecuniary losses.

52. Defendant's actions and conduct were intentional and intended to harm Plaintiff.

53. Defendant's conduct was malicious, willful, outrageous, and/or reckless and conducted with full knowledge of the law.

54. As a result of the above, Plaintiff demands Punitive Damages as against Defendant.

**AS A FIRST CAUSE OF ACTION**
**FOR RETALIATION UNDER TITLE VII**

55. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

56. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

57. Defendant engaged in an unlawful discriminatory practice by retaliating against Plaintiff and terminating Plaintiff's employment because of Plaintiff's opposition to unlawful employment practices.

58. Plaintiff was retaliated against by Defendant for engaging in protected activity.

59. Following Plaintiff's complaints, Plaintiff was subjected to a retaliatory hostile work environment permeated with adverse employment actions, and other retaliatory behavior.

60. As such, Plaintiff has been damaged as set forth herein and is entitled to the maximum award of damages under this law.

**AS A SECOND CAUSE OF ACTION FOR RETALIATION**
**UNDER THE FLORIDA CIVIL RIGHTS ACT**

61. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

62. <u>Florida Civil Rights Law</u> § 760.10(7) provides:

    > It is an unlawful employment practice for an employer, an employment agency, a joint labor-management committee, or a labor organization to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section.

63. Defendant engaged in an unlawful employment practice by discriminating against Plaintiff because of her opposition to the unlawful employment practices of Defendant.

64. As such, Plaintiff has been damaged as set forth herein and is entitled to the maximum award of damages under this law.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by <u>Title VII of the Civil Rights Act of 1964</u>, as amended, 42 U.S.C. § 2000e, *et. seq.* and the <u>Florida Civil Rights Act of 1992</u>, Florida Civil Rights Act § 760.10, *et seq.*, in that Defendant <u>retaliated against</u> Plaintiff when she reported the sexual harassment of another employee;

B. Awarding damages to Plaintiff for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendant's unlawful employment practices and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages related to injuries suffered as per Plaintiff's state law claim;

D.  Awarding Plaintiff compensatory damages for mental, emotional injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

E.  Awarding Plaintiff punitive damages;

F.  Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

G.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendant's unlawful employment practices.

Dated: March 27, 2021

Respectfully submitted,

By:   /s/ Wendy Dolce
Wendy Dolce, Esq.
Florida Bar No. 46715
DOLCE LAW PLLC
44 Court Street, Suite 1217
Brooklyn, New York 11201
T: (718) 571-9162
wendy@dolcelaw.com

By:   /s/ Marjorie Mesidor
Marjorie Mesidor, Esq.
Pro Hac Vice Forthcoming
PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC
45 Broadway, Suite 620
New York, New York 10006
T: (212) 248-7431
mmesidor@tpglaws.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 20-CV-25270-PCH

**CARLINE MAZARD-SAINTILUS,**
**and R.M., by and through her parent**
**and natural guardian, Danyeal Kight,**

      Plaintiffs,

v.

**MIAMI-DADE COUNTY,**

      Defendant.
_____/

## ORDER AFTER MARCH 18 TELEPHONIC HEARING

The matter before the Court comes after the March 18, 2021, Telephonic Hearing [ECF No. 14]. As discussed during the hearing,

1. The Court has determined, and Defendant Miami-Dade County has agreed, that Plaintiffs Mazard-Saintilus and R.M. have been improperly joined as plaintiffs in this case. As a result, one of the plaintiffs will be dismissed from this case without prejudice.
2. The dismissed plaintiff can file a complaint in a separate lawsuit by Monday, March 29, 2021.
3. Defendant Miami-Dade County has stated that it will not raise statute of limitations arguments, or timing-related defenses related to the receipt of a right to sue letter and the filing of a complaint, in the separate lawsuit.
4. As discussed in the Order Granting Defendants' Motion to Dismiss [ECF No. 12], an amended complaint in the instant case can be filed by Monday, March 29, 2021.

**DONE AND ORDERED** in Miami, Florida, on March 18, 2021.

                                              PAUL C. HUCK
                                              UNITED STATES DISTRICT JUDGE